UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JASON E. MARRIOTT,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,[1]

Defendant.

No. CV-12-0154-FVS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. (ECF Nos. 15, 18). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Jordan Dylan Goddard represents the Commissioner of Social Security (defendant). On March 18, 2013, plaintiff filed a reply. (ECF No. 20). After reviewing the administrative record and the briefs filed by the parties, the court **grants** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on April 1, 2009, alleging disability as of April 15, 2008, due to "manic depression; bipolar; heart problems; diabetes and high blood pressure (Tr. 114, 116, 137). The applications were denied initially and on reconsideration.

[1]As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue as Acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), Commissioner Carolyn W. Colvin is substituted as the defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

Administrative Law Judge (ALJ) Caroline Siderius held a hearing on August 31, 2010 (Tr. 34-61), and issued an unfavorable decision on September 21, 2010 (Tr. 19-29). The Appeals Council denied review on February 16, 2012 (Tr. 1-7). The ALJ's August 2010 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 14, 2012. (ECF No. 5).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born in 1971 and was 36 years old on the alleged onset date (Tr. 114). Plaintiff completed school through the eleventh grade (Tr. 142). He has worked as a carnie, cashier at a convenient store and as a laborer (Tr. 138). Plaintiff reported in his Disability Report that he stopped working on October 5, 2007, because he "had ingrown toe nails that prevented me from working a couple of days. The employer cut hours so I just said forget [it]" (Tr. 137).

At the administrative hearing, plaintiff indicated heart problems and depression prevented him from being able to work (Tr. 41). Plaintiff reported he had a heart attack on April 15, 2008, and, as a result, had a stint placed in his heart (Tr. 41). He was not able to clearly articulate what specific restrictions his doctors had given him with respect to his heart problems, but indicated he should not physically over-exert himself (Tr. 42-43, 53-54). He stated he has had depression for about five years and,

as a result, he does not want to go anywhere or do anything and just wants to sleep all the time (Tr. 47-48, 54). Plaintiff testified he also has high blood pressure, high cholesterol and foot pain from his diabetes (Tr. 43). He indicated that due to his impairments, he is "tired all the time" and his bones ache (Tr. 46). He stated that on a typical day he will try to walk, do some housework and then lie down (Tr. 45).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If

not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits.

*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*,

348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 15, 2008, the alleged onset date (Tr. 21). The ALJ determined, at step two, that plaintiff had the following severe impairments: diabetes mellitus; status-post myocardial infarction; hypertension; obesity; depression; and anxiety (Tr. 21). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meet or

medically equal one of the listed impairments (Tr. 22). The ALJ assessed plaintiff's RFC and determined that plaintiff could perform light work with the following limitations:

> he is able to lift 30 pounds occasionally and 20 pounds frequently; he is limited to standing and/or walking no more than four hours in an eight-hour day; he can sit up to six hours a day but requires a sit/stand option each hour; he is limited to occasional stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, or scaffolds; he should avoid concentrated exposure to extreme cold and heat, fumes, dusts, odors, gases, and hazards such as unprotected heights and heavy machinery; he is limited to occasional contact with the general public and co-workers; he can tolerate no more than occasional changes in the work setting; and he is limited to simple one to three-step tasks

(Tr. 24-25).

At step four, the ALJ found that plaintiff is unable to perform any past relevant work (Tr. 28). At step five, the ALJ concluded that, considering plaintiff's age, education, work experience and RFC, and based on vocational expert testimony, there were jobs that exist in significant numbers in the national economy that plaintiff could perform (Tr. 28-29). The ALJ thus determined that plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 15, 2008, the alleged onset date, through the date of the ALJ's decision (Tr. 29).

**ISSUES**

Plaintiff alleges the ALJ erred as follows:

1. By improperly rejecting the opinion of Dr. Sherpa, plaintiff's treating physician, regarding plaintiff's physical limitations;

2. By improperly rejecting plaintiff's subjective complaints; and

3. By improperly rejecting the opinions of Drs. Dalley and Pollack, regarding plaintiff's psychological limitations.

## DISCUSSION

### A. Physical Limitations

Plaintiff first contends that the ALJ improperly rejected the opinions of Nawang K. Sherpa, M.D. (ECF No. 16 at 9-10). Plaintiff specifically argues that Dr. Sherpa's February 4, 2008 report (Tr. 231-232) demonstrates he is much more limited from a physical standpoint than what was determined by the ALJ in this case. *Id*.

Plaintiff asserts that his treating physician, Dr. Sherpa, completed a Documentation Request for Medical/Disability Condition form on February 4, 2008, which showed he is physically more limited than what was determined by the ALJ (CF No. 16 at 9). However, on this form, Dr. Sherpa indicated plaintiff's poorly controlled diabetes and depression ***did not*** limit his ability to work or his ability to participate in activities related to preparing for and looking for work (Tr. 231). Furthermore, plaintiff's counsel submitted a "pre-hearing memorandum" to the ALJ which stated that Dr. Sherpa's February 4, 2008 report indicated that plaintiff "did not have any physical or psychological limitations which would interfere with gainful employment" (Tr. 110). Accordingly, it is apparent Dr. Sherpa's February 4, 2008 report does not support a more restrictive physical RFC assessment in this case.

While the ALJ's decision did not specifically discuss Dr. Sherpa's February 4, 2008 report, the ALJ did not err in this regard because this medical record does not contradict the ALJ's RFC determination that plaintiff could perform a restricted range of light exertion level work (Tr. 24-25). *See Howard ex rel*

*Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (In interpreting the evidence and developing the record, "the ALJ is not required to discuss evidence that is neither significant nor probative"). Moreover, because plaintiff's alleged onset date is April 15, 2008 (Tr. 114), Dr. Sherpa's February 4, 2008 report predates the relevant time period in this case. The ALJ did not err by failing to address Dr. Sherpa's February 4, 2008 report.

**B. Plaintiff's Credibility**

Plaintiff next asserts that the ALJ erred by failing to properly consider his symptom testimony. (ECF No. 16 at 10-12). Plaintiff argues that the ALJ failed to state specific reasons to reject his testimony regarding severe fatigue and a need to lie down frequently throughout the day. *Id*.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the c1aimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 25). The ALJ noted several reasons for reaching this conclusion (Tr. 25-27).

The ALJ noted that plaintiff "quit his last job in October 2007 because his employer cut his hours and not because of any medical or psychological condition" (Tr. 27). The fact that a claimant stops working for reasons other than his alleged impairments is a valid reason for the ALJ to find that a claimant is less than fully credible. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff stated in his Disability Report that he stopped working on October 5, 2007, because he "had ingrown toe nails that prevented me from working a couple of days. The employer cut hours so I just said forget [it]" (Tr. 137). It was appropriate for the ALJ to note the fact that plaintiff stopped working for reasons other than his alleged impairments as a basis to find him not entirely credible.

The ALJ also indicated the record reflects plaintiff did not comply with his prescribed diabetes treatment (Tr. 26). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated that plaintiff's treating physician Dr. Sherpa noted plaintiff appears healthy when his diabetes is under control, but

that plaintiff is not always complaint with treatment (Tr. 26, 268, 271). Plaintiff reported in May 2009 that he was only checking his blood sugar once a week even though his doctor advised him to check it four times a day (Tr. 26, 265). As pointed out by defendant (ECF No. 18 at 10), the record reveals that plaintiff's diabetes condition was consistently described by his doctors as "uncontrolled", "poorly controlled", or "inadequate[ly] control[led]" (Tr. 265, 271, 277, 288, 293, 295, 429). The ALJ also noted that Douglas Waggoner, M.D., opined in May 2010 that plaintiff did not appear to take his condition seriously as he continued to smoke and did not exercise (Tr. 26, 484-485). Plaintiff's failure to follow the prescribed diabetes treatment was an appropriate factor for the ALJ to consider in assessing plaintiff's credibility.

The ALJ further indicated that the objective medical evidence did not support the level of physical limitation plaintiff alleged (Tr. 25). A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ noted plaintiff alleges disability as of the day of his myocardial infarction in April 2008, and, on that day, plaintiff was playing basketball "for several hours" and experienced chest and shoulder pain (Tr. 25, 307). Less than a month after having a stent placed, it was noted he was "doing well", and plaintiff reported he was walking up to a half-hour daily without difficulty (Tr. 25, 316). The ALJ indicated the medical evidence of any further heart problems is "essentially non-existent" and a 2009 echocardiogram

and subsequent nuclear stress test were both considered normal (Tr. 26, 479, 487). In January 2010, Dr. Sherpa advised plaintiff to exercise (Tr. 429), and on May 21, 2010, Dr. Waggoner opined that plaintiff would benefit from working (Tr. 485). The objective medical evidence does not support the level of physical limitation plaintiff has alleged in this case.

The ALJ also indicated that the objective medical evidence did not support the level of mental limitation plaintiff alleged (Tr. 26). In December 2008 and February 2009, Dawn Wilcox, M.S., under the supervision of Mahlon Dalley, Ph.D., examined plaintiff and noted he was "rarely distracted" and "seemed to persist through difficult tasks" (Tr. 26, 239). It was reported that plaintiff did not show any indication of loosening associations, tangentialness, or circumstantiality in his thought process, and there was no evidence of a formal thought disorder, psychotic process or disturbance in reality (Tr. 26, 240). Dennis Pollack, Ph.D., examined plaintiff in July 2010 and, like Ms. Wilcox/Dr. Dalley, found plaintiff to have logical and progressive thinking, persistence and a cooperative attitude (Tr. 27, 490). Dr. Pollack described plaintiff as a "very bright individual" and indicated plaintiff was working on completing his GED and had passed the mathematics and science sections (Tr. 27, 495). It was appropriate for the ALJ to conclude that the objective medical evidence additionally does not support the level of psychological limitation plaintiff has alleged in this case.

The ALJ also noted plaintiff's activities as inconsistent with his alleged limitation (Tr. 26). It is well-established that the nature of daily activities may be considered when evaluating

credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated that plaintiff reported to walking for transportation in December 2009 (Tr. 26, 432) and taking "a lot of shingles" up to the roof of his mother's house in July 2009 (Tr. 26, 448). In addition, on examination in December 2008 and February 2009, Ms. Wilcox/Dr. Dalley noted plaintiff reported no difficulty completing daily household chores, preparing his own meals, bathing and attending to basic hygiene and doing his own laundry (Tr. 240). On examination in July 2010, plaintiff informed Dr. Pollack he did the household chores of mowing the lawn, making beds, sweeping and washing clothes (Tr. 492). This level of activity is not consistent with plaintiff's claim of disabiling impairments.

Lastly, the ALJ concluded the evidence suggests plaintiff is quite capable of several activities but lacks motivation (Tr. 27). The Ninth Circuit has recognized that the ALJ may properly consider the issue of motivation in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

///

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for discounting plaintiff's subjective complaints are clear, convincing, and fully supported by the record. Accordingly, the ALJ did not err by concluding that plaintiff's subjective complaints regarding the extent of his functional limitations were not fully credible in this case.

**C. Psychological Limitations**

Plaintiff's final contention is that the ALJ failed to properly account for his psychological limitations. (ECF No. 16 at 12-14). Plaintiff specifically argues that the ALJ failed to give specific and legitimate reasons for discounting the limitations assessed by Ms. Wilcox/Dr. Dalley and Dr. Pollack. *Id*.

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of her familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Andrews*, 53 F.3d at 1042-1043. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ determined that plaintiff could perform a restricted range of light exertion level work (Tr. 24-15). With respect to non-exertional limitations, the ALJ concluded plaintiff "is limited to occasional contact with the general public and co-workers; he can tolerate no more than occasional changes in the work setting; and he is limited to simple one to three-step tasks" (Tr. 24-25). The undersigned finds this RFC determination is supported by substantial record evidence. *See infra*.

On May 28, 2009, Patricia Kraft, Ph.D., a reviewing psychological evaluator, opined that plaintiff was capable of understanding, remembering and following through with simple and complex instructions and was capable of adequate persistence and pace (Tr. 355). Dr. Kraft noted possible attention issues and

indicated plaintiff could manage superficial interactions with others in the work place but would work best away from the general public (Tr. 355). Dr. Kraft further noted that plaintiff may take longer to adjust to change. Rita Flanagan, Ph.D., affirmed Dr. Kraft's assessment on September 4, 2009 (Tr. 408). The limitations discussed by Dr. Kraft and affirmed by Dr. Flanagan are reflected in the ALJ's RFC determination (Tr. 24-25). In addition, as noted above, plaintiff's treating physician, Dr. Waggoner, opined on May 21, 2010, that although plaintiff had mental impairments, he "would benefit from working" (Tr. 485). The opinions of these medical professionals are consistent with the ALJ's determination that plaintiff can perform work with certain non-exertional restrictions as indicated in the ALJ' RFC assessment.

In December 2008 and February 2009, plaintiff was examined by Ms. Wilcox, under the supervision of Dr. Dalley (Tr. 237-246). It was noted that plaintiff last used marijuana two months prior to his initial evaluation, with an average use of once per month (Tr. 239). During the examination, it was observed that plaintiff was "rarely distracted" and "seemed to persist through difficult tasks" (Tr. 239). It was reported that plaintiff did not show any indication of loosening associations, tangentialness, or circumstantiality in his thought process, and there was no evidence of a formal thought disorder, psychotic process or disturbance in reality (Tr. 240). It was noted that plaintiff reported no difficulty completing daily household chores and could manage his own finances (Tr. 240). The medical professionals concluded that plaintiff's cognitive functioning "should not

interfere with his ability to maintain employment" (Tr. 245). Although it was opined that symptoms of plaintiff's mood disorders "are likely to interfere" with his ability to function in a normal employment position (Tr. 245), the level of interference, or resulting restrictions, was not identified and it was not opined that plaintiff's mood disorders would prevent him from working altogether. As noted by the ALJ with respect to this report, "the claimant's mental impairments interfere with his functioning, but not to the extent that he is precluded entirely from full-time employment" (Tr. 26-27, 245).

The report of Ms. Wilcox and Dr. Dalley, as discussed above, does not contradict the ALJ's RFC determination which accounts for limitations resulting from plaintiff's mental impairments/mood disorders: limited to occasional contact with the general public and co-workers, no more than occasional changes in the work setting, and limited to simple one to three-step tasks" (Tr. 24-25). The undersigned finds the ALJ properly accounted for the opinions of Ms. Wilcox and Dr. Dalley when formulating her RFC determination in this matter. Contrary to plaintiff's assertion, the ALJ did not reject the Wilcox/Dalley report.

In July and August 2010, plaintiff was examined by Dr. Pollack. As noted in Section B, Dr. Pollack found plaintiff to have logical and progressive thinking, persistence and a cooperative attitude, described plaintiff as a "very bright individual" and indicated plaintiff was working on completing his GED and had passed the mathematics and science sections (Tr. 27, 490, 495). Although "[n]o unusual anxiety symptoms were reported" (Tr. 490) and plaintiff denied "any anxiety related behaviors"

(Tr. 492), Dr. Pollack diagnosed plaintiff with an anxiety disorder (Tr. 27, 495). In addition, plaintiff did not mention his ongoing marijuana use to Dr. Pollack (Tr. 23, 492); consequently, as noted by the ALJ, Dr. Pollack did not have a full picture of plaintiff's mental health (Tr. 27). Dr. Pollack concluded on a Mental Medical Source Statement that plaintiff had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 497) and gave plaintiff a global assessment of functioning score of 50[2] (Tr. 495). This significant degree of limitation is not reflected elsewhere in the medical record and is thus inconsistent with the weight of the record evidence. Furthermore, as noted by the ALJ (Tr. 23), it was internally inconsistent for Dr. Pollack to have found that a "very bright individual" would have no limitation in his ability to sustain an ordinary routine without special supervision (Tr. 497 ¶ 8) but would be markedly limited in his ability to complete a normal workday (Tr. 497 ¶ 11). The ALJ additionally indicated that Dr. Pollack failed to provide adequate support for his opinion that plaintiff had marked limitations in two areas of functioning (Tr. 27). The undersigned finds that the ALJ provided

---

[2]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

specific, legitimate reasons supported by substantial evidence for giving little weight to the significant limitations assessed by Dr. Pollack.

In sum, the ALJ provided specific, legitimate reasons supported by substantial evidence for giving little weight to the limitations assessed by Dr. Pollack and the ALJ's RFC determination, which accounts for limitations stemming from plaintiff's mental impairments/mood disorders (Tr. 24-25), is supported by the reports of Dr. Kraft, Dr. Flanagan, Dr. Waggoner, and Ms. Wilcox/Dr. Dalley. The medical evidence of record does not support a more restrictive mental RFC assessment in this case. The ALJ's RFC determination is in accord with the weight of the record evidence.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 18**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 15**) is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendant, and **CLOSE** this file.

**DATED** this 9th day of August, 2013.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge